JDN

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Timothy Tim Cervantez,  )  No. CV 11-1089-PHX-DGC (SPL)
)
    Plaintiff,  )  **ORDER**
)
vs.  )
)
Deputy Warden Creedio, et al.,  )
)
    Defendants.  )
_____)

Plaintiff Timothy Tim Cervantez brought this civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections (ADC) Deputy Warden Barrios (Doc. 5).[1] Before the Court is Defendant's Motion to Dismiss for failure to exhaust administrative remedies (Doc. 20), which Plaintiff opposes (Doc. 22). The Court will grant Defendant's motion and terminate the action.

**I.  Background**

Plaintiff's claims arose during his confinement at the Arizona State Prison Complex-Rynning Unit, in Florence Arizona (Doc. 5 at 1). In his First Amended Complaint, Plaintiff alleged that his Eighth Amendment rights were violated when he was placed in a cell with another inmate with whom he previously had a physical confrontation (id. at 4, 12-14). Plaintiff averred that he informed Defendant about his safety concerns but that Defendant failed to move Plaintiff to another cell (id.). Plaintiff stated that he was subsequently

---

[1]Upon screening, the Court dismissed 16 named and unnamed "Doe" Defendants (Doc. 8).

attacked by his cellmate (id.).[2]

## II. Motion to Dismiss

### A. Defendant's Contentions

Defendant now moves to dismiss the First Amended Complaint on the ground that Plaintiff failed to exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (Doc. 20). In support, Defendant submits the declaration of Aurora Aguilar, an ADC Hearing Officer (id., Ex. 1, Aguilar Decl. ¶ 1). Aguilar describes the steps in the ADC grievance process, which are set forth in ADC Department Order (DO) 802 and which were modified by Director's Instruction (DI) 287 in May 2010 (id. ¶¶ 3, 5, Exs. A-B). First, an inmate must try to resolve his complaint through informal means (id. ¶ 5). If the issue is not resolved, the inmate may file an informal complaint by inmate letter within 10 days after the issue arises (id.). If the inmate is not satisfied with the inmate-letter response, he may file a formal grievance to the Deputy Warden (id.). If not satisfied with the Deputy Warden's response, the inmate may file a grievance appeal to the Warden (id.). And if not satisfied with that response, the final step is an appeal to the ADC Director (id.). Aguilar states that inmates receive a written and oral explanation of the grievance process during their orientation and copies of DO 802 and DI 287 are available in each unit's library (id. ¶¶ 8-9). Aguilar avers that she reviewed the Grievance Appeal Log and Grievance Appeal File and determined that Plaintiff did not appeal any grievance related to his confinement in a cell with an inmate who had assaulted him (id. ¶¶ 11-12).

In his motion, Defendant notes that Plaintiff admitted in his First Amended Complaint that he did not exhaust his administrative grievances (Doc. 20 at 5, citing Doc. 5 at 4). Based on Plaintiff's admission and Aguilar's declaration, Defendant argues that Plaintiff did not exhaust remedies for his claim against Defendant and the action should be dismissed (id.).

---

[2]Plaintiff's failure-to-protect claim is set out in Count II (Doc. 5). The Court dismissed Count I, which alleged a due process claim (Doc. 8).

### B. Plaintiff's Response[3]

Plaintiff opposes Defendant's Motion (Doc. 22). In support of his opposition, Plaintiff submits his declaration, which sets forth the following facts:

In October 2010, Plaintiff was assault by two inmates and suffered extensive injuries (Doc. 24 at 1). After he was treated at medical, he was placed in the central detention unit (CDU) and subject to a disciplinary hearing, at which he was found guilty of starting the incident that led to his assault (id. at 2). While he was in CDU, he was placed with inmate Valdez; after a physical confrontation with Valdez on February 2, 2011, Plaintiff was moved to another cell (id.). Although numerous officers attempted to get Valdez and Plaintiff to cell together again, both inmates refused (id. at 2-3). Defendant then came to CDU and promised Plaintiff that Valdez would not seek revenge for past differences and that Defendant would do whatever he could to get Plaintiff and Valdez out of CDU and back on the yard (id. at 3). Neither Defendant nor Valdez kept their word, and Plaintiff was severely assaulted (id.).

Plaintiff asserts that he was not able to file a grievance prior to the assault by Valdez because he relied on Defendant's assurances that Plaintiff would be protected and, thus, he could not allege a problem until the assault occurred (Doc. 22 at 2-3). Plaintiff explains that under DO 802, Defendant is the official with final authority to review grievances and a grievance in this situation would have been futile since Defendant was the one who caused the problem (id. at 3). Plaintiff contends that because Defendant promised to help him, there was no need to file a grievance (id. at 4). Plaintiff adds that Defendant's promise came with an ultimatum—either house with Valdez or get written up for disciplinary violation (id.).

Plaintiff provides further argument regarding the deliberate-indifference standard and his contention that in this situation, both elements of the standard are met and Defendant is liable for violating his Eighth Amendment rights (id. at 5-7).

---

[3] The Court issued the Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003), which informed Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendant's contentions (Doc. 21).

### C. Defendant's Reply

Defendant asserts that Plaintiff failed to present any evidence to show that he attempted to exhaust remedies for his claim (Doc. 23). Defendant maintains that even though a grievance could not reverse the inmate assault on Plaintiff, he was nonetheless required to exhaust remedies for his complaint (id. at 2). Defendant states that exhaustion cannot be waived on grounds of futility or inadequacy, as Plaintiff argues (id.). Defendant further states that even if Defendant had denied Plaintiff's grievance, the administrative procedures provide that Plaintiff could have appealed Defendant's denial to the ADC Director (id. at 2-3).

## III. Exhaustion

### A. Legal Standard

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). A prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted). If a court finds that the plaintiff failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Wyatt, 315 F.3d at 1120.

**B.     Analysis**

As stated, Defendant must demonstrate that there were remedies available to Plaintiff. See id. at 1119; see also Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005). Defendant submits evidence that ADC had an established grievance process and Plaintiff was aware of and had access to that process (Doc. 20, Ex. A, Aguilar Decl. ¶¶ 5, 8-9; Doc. 5 at 4 ¶ 5(a)).

In his pleading, Plaintiff indicated that he did not submit a request for administrative relief because the assault had already occurred and the "damage was done" (Doc. 5 at 4 ¶ 5(b), (d)). Plaintiff's only explanation for not filing a grievance after the assault—to complain about Defendant's failure to ensure Plaintiff's safety—is that such a grievance would have been futile (Doc. 22 at 3). As argued by Defendant, a claim that a grievance would be futile does not excuse the exhaustion requirement. See Booth, 532 U.S. at 741 n. 6. And because exhaustion does not turn on the merits of Plaintiff's claim, his arguments related to whether he can show deliberate indifference by Defendant are not considered on Defendant's motion. See Wyatt, 315 F.3d at 1119.

Defendant has met his burden to show that remedies were available to Plaintiff, but that Plaintiff failed to exhaust his claim. Defendant's Motion to Dismiss will therefore be granted and Plaintiff's First Amended Complaint will be dismissed without prejudice.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion to Dismiss (Doc. 20).

(2) Defendant's Motion to Dismiss (Doc. 20) is **granted**; the First Amended Complaint is dismissed without prejudice for failure to exhaust administrative remedies.

(3) The Clerk of Court must enter judgment of dismissal accordingly.

(4) For the reasons set forth herein, pursuant to 28 U.S.C. § 1915(a)(3), an appeal from the judgment in this action would not be taken in good faith.

DATED this 23rd day of February, 2012.

_____
David G. Campbell
United States District Judge